Good morning, Your Honors. May it please the Court, I am David Michael. I am the attorney for Loretta Wymer and Thomas Grossi in these two related proceedings, both the civil forfeiture case and the criminal case that's on appeal before this Court. I think the issue that should be framed in this appeal is, did Loretta Wymer and Thomas Grossi in the civil forfeiture case and or Loretta Wymer in the ancillary proceeding in the criminal case have a right to attorney fees and cost pursuant to 28 U.S.C. 2465B1, which provides for it. Let me ask you a very tough question for me with your argument. Was there ever a time when Wymer, while she was in the case, won anything? Was your question won anything? Yes. Did she ever win a case? It seemed to me that every time, that as long as Wymer participated, she lost. She lost in the appeal to us. She lost. We reversed, saying no equitable subordination. The district court then forfeited the whole. She didn't participate in the second appeal. So I guess I'm trying to figure out where she won, where she was the prevailing party. I don't think that was the status of the case. In fact, Judge ---- Well, where did she win? She won in the second appeal, for sure. She wasn't in the second appeal. Well, if you ---- She did not participate in the second appeal. Only your client participated. If I ---- I'm sorry that I said Grossi instead of Grossi, but Wymer did not participate in the second appeal. If you read the decision in Grossi 2, the court specifically ---- I read the decision, but was Wymer there? May I quote it, Your Honor? Sure. You could quote it, but Wymer wasn't there. The court of appeals said in Grossi 2 ---- Was Wymer represented in that appeal? I'm sure she was. Did she appeal? No. I think she was. No, she did not appeal. Well, in Grossi 2, the court of appeals said the $87,666.80 represents Wymer's interest. Well, I understand. Then it was never part of the property subject to forfeiture in the first place, in the first place. So regardless of what happened in any of the proceedings, the court determined that $87,000 was never subject to forfeiture in the criminal case at all. It could have never been subject to forfeiture. The government never obtained a forfeiture of that property in the first instance. So that property has never been forfeited to the government. In fact, it was ordered returned. And the property was returned. Now, the only way that property could have been returned to Grossi or Loretta Wymer doesn't make any difference, quite frankly, is either through the ancillary proceeding or through the civil forfeiture case. And Judge Jensen said specifically in the remand, and I think it's in our brief, he specifically said, look, both these cases have been running parallel all through the litigation in the district court. And they did run parallel through the litigation in the district court. So I think it's an academic question that you ask, Your Honor, with all due respect. With all due respect, I don't think it's academic at all. I tried to go through the proceedings and I tried to see who the parties were because it seems to me that a court should not give fees to someone who is not in the proceeding. And I saw that Wymer was repaid by Grossi. I saw that she was in the first appeal, participated, argued, and it was sent back to the district court. I also saw she was in the proceeding where the district court forfeited the whole amount. After that, I do not see Wymer in it at all. Grossi may have argued for what Wymer would have argued, but Grossi was the only one as a party to the proceeding. With all due respect, Your Honor, that's not what the district court decided after Grossi 1 was decided. Grossi — the district court, in fact, prior to Grossi 1, ruled, based on equitable subrogation, that the $87,000 was returned to Grossi. The district — the court of appeals in Grossi 1 — Are you representing to me — I appreciate your arguments you're making, but are you that she had counsel, that counsel argued, that counsel was even there? Are you making that representation, counsel? Your Honor, I represented both Loretta Wymer and Thomas Grossi throughout all of the proceedings. Well, counsel, maybe the Idaho language is not getting through here, so I'll try California language. I'm looking at the caption of the case, and it's United States v. Grossi, plaintiff appellee v. Thomas Grossi, Sr., claimant appellant. There is no mention of Ms. Wymer being an appellant in that case. I think that's what Judge Smith is trying to ask you here. So did she ever — did she ever make any type of appearance in the second appeal, yes or no? I cannot answer that question. I'm a little bit — You just said you represented her before. Why can't you answer — I've always represented her, and I don't know what the caption of that appeal was in the second appeal. I don't have it before me. Was the civil forfeiture case also part of that second appeal? You were going to quote from us from the second appeal. We're just trying to figure out what — and you said you represented her. I am — So your position today is you don't know whether or not Ms. Wymer was involved in the second appeal of this Court or not. I don't know. But I do know that the money that was at issue was discussed by the court of appeals in the second appeal, and the court of appeals in the second appeal decided and concluded that that $87,000, $666, represents Wymer's interest and that it was never subject to forfeiture. So my point is that that money was never subject to forfeiture. The government had seized that money. The government had possession of that money. It took us 10 years, because this case originated 10 years ago, and this is our third appeal, to force the government to disgorge themselves of that $87,000 and return it. Now, the academic question is whether they return it to Grossi or return it to Wymer to me is somewhat academic, because I think under either circumstance, under either circumstance, we have a right to attorney fees. The government gave up that $87,000. All due respect, Your Honor, Judge Jensen never ordered that $87,000 forfeited whatsoever. The Ninth Circuit precluded him from doing so. The only issue before Judge Jensen on the last remand was whether or not we had a right to attorney fees because of the $87,000 that was in fact returned to Thomas Grossi as the Ninth Circuit ordered. So we have a situation where the Ninth Circuit ordered the money returned to Grossi and the issue was attorney fees. Now, when the Ninth Circuit said in Grossi II, regardless of whether Loretta Wymer was represented by counsel, that the $87,000 represents Wymer's interests, that's the decision of the Ninth Circuit, and it said that that money was never part of the property subject to forfeiture in the first place. That's the exact language of the Ninth Circuit Court of Appeals. So we go back down to the district court, and the issue is since the government gave the money back, since the Ninth Circuit ruled that it was never part of the criminal forfeiture to begin with, why don't we have a right to attorney fees for spending 10 years and obtaining the return of that money? That's the issue. Roberts. Go ahead. What part of the attorney's fees is your client entitled to? What proceeding would you say your client gets attorney's fees for? She wasn't at the second appeal. So what does she get attorney's fees for? That's a good question. We certainly believe that she doesn't have a right to attorney fees for any of the criminal proceedings related to Thomas Grossi. That, I think, is she doesn't have a right to it under statute. But she has a right to the attorney fees for the ancillary proceeding in the criminal case under 853N, and she has a right to attorney fees for the litigation in the civil forfeiture case, because there are two parallel cases that were running. Even though the civil forfeiture case was stayed during the pendency of the criminal case, those are the proceedings in which she has a right to attorney fees. And that's what the statute says. I mean, it's an attorney fee statute that was passed by CAFRA in 2000, which was an attempt to reform the abhorrent forfeiture laws that existed prior to that time. I guess you asked for attorney's fees in this case, too, the third time here. This appeal is actually captioned as a civil forfeiture case and the related criminal case. So we are here on both of those cases. To the extent that it affects the ancillary proceeding under 853N or the civil forfeiture case, I believe we would have a right to request attorney fees. Now — So, counsel, if I may, let's assume for a moment, I know you think it's academic, but let's say we disagree with you. And we say, you know what? We say Weimer was out of the case. She settled up with Grossi before any good news came your guy's way. So now we're only faced with Grossi. There's that language in the law that says that, you know, a criminal defendant basically cannot be a claimant. Help me understand how Grossi would be entitled to relief in this case if it's just Grossi and there's no Weimer. And I think you put your finger on something that's somewhat tricky. In fact, the statute only applies if the property was subject to criminal forfeiture to begin with. That, I believe, is a limitation of that statutory provision that precludes a defendant from obtaining a benefit of a property that was subject to forfeiture in a criminal case through another proceeding. And that makes sense that Congress would pass that kind of law. If you're the criminal defendant, you can't go step in in a civil forfeiture proceeding and try to obtain the property back that was subject to forfeiture in the criminal proceeding. But what we have here and why that doesn't apply is we have the Ninth Circuit saying that that money was never subject to forfeiture in the criminal proceeding. Never. It never was. The government never had a right to it to begin with. In fact, and to somewhat respond to your concerns in terms of rights and fairness, Your Honor, which I perceive from some of your questions, is that money would have – if the government would have ever gotten that money, it would have represented double-dipping to the government. Thomas Grossi, during these proceedings, after the ancillary petition was filed by Loretta Weimer, paid his sister back that money. And that's what created a little bit of a mess in terms of who had a right to what and when somebody had a right to something. Okay. He acknowledged, he paid her back. If he never would have paid her back, she would have won the ancillary proceeding herself or the civil forfeiture proceeding on the grounds that it was her money and she had standing in that civil forfeiture. As it turned out, he had, by the time she filed her ancillary petition, he had paid somebody back, and by the time the case was over, since it's been 10 years, he completely paid her back. For the government to have received that money would have been double-dipping by the government. Not only would they have gotten the property, but they would have gotten Loretta's interest in that property, her loan that she put on that property. So there's inherent unfairness, and the Ninth Circuit also addressed it on equitable principles in their decision, and Grossi, too. I understand. In fact, I read what the Ninth Circuit did both times. It's not mine to reason why, not mine to say they were right. It's only mine to now, given what they've said, try to come up with something that we ought to do based on what they did. So, therefore, I go again to my good colleague's question. It seems to me like if I can't find a place for Weimer to get the money, I'm trying to find a place for Grossi to get the money. And so I say to myself, okay, for what reason should Grossi get the money? Where does he get it? In which opportunity is it his? Is he going to get it in the proceeding she brought, the ancillary proceeding? Am I going to give it to him in the proceeding he took to the Ninth Circuit? If I'm taking it on that, then I have to read 28 U.S.C. 2465 that said the claimant is precluded, and that's where my client was. If I look at the ancillary proceeding, I'm even worried whether the government has even waived its sovereign immunity as to that proceeding, and whether, therefore, there are any fees that can be established, because the actual, whether that 853N proceeding can be a CAFRA proceeding, I'm not sure it can. So that's why I think these questions are pretty important. And I'm laying it out there for you. I appreciate that you were aggravated about that, but that's where we are. There are some good questions there, but I've got 12 seconds left. You've got as much time as I ask them, I'll let you answer them. Will you let me go over a little bit to answer them? Okay. The sovereign immunity question, I think, is easily answered if you just look at Judge Scalia's decision in the U.S. v. Williams case, because this whole thing about whether or not it has to be an explicit waiver was dealt with that, and where he said that you can look at Congressional's intent to infer a waiver, like they did in the, I think, the Federal Torts Claim Act. Well, CAFRA is the same as the Federal Torts Claim Act. And I will tell you, it's somewhat exciting that CAFRA actually sprang out of a decision by this Ninth Circuit back in 1994 in U.S. v. $191,000, a case I argued 20 years ago for crying out loud. And that case led to CAFRA. And CAFRA was a bill which was called a Civil Asset Forfeiture Reform Act. And my task force at NACDL got Henry Hyde, the congressman from Illinois, to present that bill to Congress, and it passed almost unanimously, and it was signed by President Clinton back in the year 2000. It was truly a reform bill. And in coming to that reform, there was a decision by Congress that civil asset forfeitures are frowned upon by the government, they're looked with disapproval, that the burden is on the government to strictly adhere to the rules regarding civil forfeitures, and that it's a reform bill to make things more fair for claimants. So to take any aspect of that Civil Asset Forfeiture Reform Act and to use it in a way that denies somebody the right to really fairly have representation in litigating forfeiture cases, to me, seems wrong. And I think it shows an expression, just like Scalia said about the Federal Tort Claim Act, that you can look at congressional intention in passing a law to see whether or not that constitutes a waiver of sovereign immunity. So there's the answer to that. As to your other question, Your Honor, that's all problematic. But I think that the most important issue in looking at those statutes is the Ninth Circuit has already said, and it's the law of this case, that that money was never subject to forfeiture to begin with. The only statutes that talk about a defendant not being able to retrieve property is only relates to property that was subject to forfeiture to begin with in the criminal proceedings. And that makes sense. And I don't disagree with that. So I thank you for letting me go over the time. I do appreciate it. Well, thank you for your answer. And if you want me to respond to anything that Mr. Owen Mardikin has to say, I'll be right here. Well, I know sometimes counsel would love to get up and respond. And frankly, I like to give counsel more chance to respond. But we have another hearing with another judge that's supposed to come right after this. And so that's why I'm being pretty safely on the time requirements. May it please the Court. Good morning, Your Honors. Owen Mardikin, arguing for the United States. Your Honors, there is no waiver of sovereign immunity in this case because the property at issue was forfeited as part of a criminal forfeiture proceeding. But it wasn't supposed to be forfeited as part of a criminal forfeiture proceeding. It wasn't the bad guy's money. Well, that decision was made in the context of a criminal forfeiture proceeding. Now, and it was actually made in the context of an ancillary proceeding. Mr. Grossi forfeited his interest in the property after a jury in the criminal case entered a verdict finding that the property was used to commit a crime. After that, the court, the district court, in a criminal case, and that's at page 32 of the supplemental excerpt of record, entered a preliminary order of forfeiture just in the criminal case which forfeited his interest in the property and which forfeiture became final at his sentencing. After that, there was only the ancillary proceeding, which is part of the criminal forfeiture under 853N, where Ms. Weimer came in, as well as a couple other people to assert their interests. And as this court held in Lazarenko, that could only take place in this ancillary proceeding, which is part of the criminal forfeiture. In this case, the civil forfeiture was filed first. It certainly was. It was served. There were some answers filed, but nothing of substance happened in that case. It was stayed immediately upon the filing of the indictment, and nothing of substance ever happened in that case. All of the action, all of the forfeiture action in this case was part of the criminal proceeding. And as this court held in the synagogue case and in the unpublished decision later, Shanholzer, the 2465B waiver of sovereign immunity does not apply to proceedings involving criminal forfeiture, which is what this is. Okay. Counsel, what if – let's assume the following. Assume – and I'm not deciding, just for argument's sake – assume that we agree with you that the ancillary proceedings, there has not been a waiver of sovereign immunity. We follow the Moser decision in the Eighth Circuit. What's weird about this case was that Weimer took over – I'm sorry, Grossi took over Weimer's interest and, in a sense, prevailed on Weimer's interest. Now, I know Weimer wasn't there. Weimer was not part of the second appeal. But Grossi, in a sense, was advocating Weimer's interest. He kind of got it, in a sense, with the $80,000, $78,000. Why shouldn't we award Grossi attorney's fees on behalf of the – effectively the work he did for Weimer? Not for his own interest. He's a claimant, and I think capital prohibits that. But he was, in a sense, standing in the shoes as a successor of Weimer. Maybe limited fees. But why shouldn't he get that? Well, because I – the district court – I mean, this Court's decision in Grossi 2, it said two things. It said, first, that her interest was extinguished. So it was giving the money back to Mr. Grossi while it represented what had been her interest before she was paid off. Her interest actually was extinguished back in December of 2006 when he repaid her. So he was really asserting his own interest in that case. Right. But there's all this litigation over this money that should never have been forfeited. And if we agree with your position, they will have expended considerable fees to get that money back, and yet the government kind of gets a pass just because of the strange nature of this case. If she had decided to stay in this case and the same result occurred, she would get fees, wouldn't she? If she – well, no, Your Honor, because it's a – she got that as a – she would have gotten that as part of the ancillary proceeding, which is a criminal forfeiture. Well, but there's the – you mentioned there was the – I agree with you. Ancillary – assume that's off limits. Correct. There was the initial proceedings, maybe very small at the beginning. You mentioned that most of the actions happened in the criminal case. But there's that time period when the civil forfeiture was initiated and before the criminal charges were brought where there would have been some fees generated during that time period, I presume. I presume. Perhaps minimal, but there would be some. Yes. And then there is this appeal. Yes. Why wouldn't she, if she were still in the case, be entitled for fees for that small window of time at the beginning and anything concerning this appeal? Because the actual forfeiture, the forfeiture of property in this case was done in the criminal case. He forfeited his property based on the jury's verdict in the criminal case and based on the preliminary order of forfeiture in the criminal case. So – and she – I'm sorry. No, but just – I'm sorry to cut you off, but there's still that $87,000. Yes. That was never forfeited. It was not subject to forfeiture as this Court held, yes. So that – I'm only talking about that amount of money. So the efforts that Grossi expended pretending he was Weimer. Yes. Why wouldn't there be fees for that? Well, first off, because he's a convicted criminal. Okay. So I understand your first thing. Yes. A claimant cannot get it, but here he's a claimant, but he's representing the But he's not, Your Honor. He's representing his own interest. This Court didn't – even in Grossi II, it was trying to figure out in equity what to do with this bit of money. But it wasn't saying that he had some kind of a special character as a plaintiff, that he was not – that he was in some method representing Ms. Weimer. It was simply recognizing the pragmatic fact that he had paid back the debt and that her interest was extinguished and it was – they would rather have him get it back than the government as a matter of equity. So if I may just follow up. So it would be your position then if there was one family member who was convicted and there were five that were not, and those five family members essentially were bought out by the defendant family member, and the defendant family member proceeded and ended up prevailing, that because he was convicted, even though he was, in a sense, bringing the claims of the innocent family members, because he's convicted, there can be no attorney's fees in that situation? If he's convicted and his interest in the property was subject to criminal forfeiture, which is the whole language of that statute, and as in that case that you've – the hypothetical that you've provided, as well as in this case, the defendant's – Mr. Grossi lost his whole interest in the property, criminal forfeiture. And so he falls within the plain language of that statute. But I think there's a broader problem, which is when the actual forfeiture involves criminal forfeiture, and that was the language that this Court used in synagogue, which is proceedings involving criminal forfeiture. And I don't think there's any serious dispute that these are proceedings involving criminal forfeiture, that that waiver of sovereign immunity does not apply. So – It sounds like you're saying you win either way. You win if Grossi is the claimant of the property. You win if Wimmer is the claimant of the property. You're saying no matter – you wrongfully take property, and both sides lose. Well – The way you look at it. We do, because attorney's fees – I mean, sovereign immunity is not a matter of equity. The waiver of sovereign immunity against the United States has to be specific, clear, and definite. So the overriding rule is sovereign immunity. The waiver is the exception. So even though the Court might think, well, as a matter of fairness, they worked hard, Mr. Grossi got some money back, there has to be a specific waiver of sovereign immunity, which there isn't in this case. So, yes, in this case, the government didn't get the $87,000, but the government does not have a waiver to pay attorney's fees. And I'd like to talk a little bit, putting aside that waiver issue, sovereign immunity issue, to talk about the specific defendants, because I don't believe that the question is academic. I think it's the opposite of that. It's the most practical question ever, which is, who is the party and who has prevailed? As the Court noted, Ms. Wimmer never prevailed. She lost in the only appeal that she participated in, and the fact that she may have prevailed in spirit, in the sense that she was happy that her brother got this money, is not, under Buckhannon, put her within the realm of a prevailing party at all, not to mention a substantially prevailing party. Do you suggest that in the December 2, 2010 hearing, that the district court forfeited the $87,666? Yes. So all was forfeited at that point? Well, I mean, all of the proceeds were forfeited then, including the $87,666? Yes. And the only reason then, then why is it that Grossi doesn't win when he goes on appeal, and the appeal court said, no, the $87,666 was not forfeited? Oh, well. He wins. Yes. But then, even though he wins, he cannot collect under 28 U.S.C. 2465. Yes, and for the two reasons. The first, that he is a convicted criminal defendant, under the broader question, but second, because it's a criminal forfeiture proceeding, and so there isn't a waiver under that statute to begin with. And I think there might be a question in the broader sense whether, because he won that piece of money, the fact that he lost the entire property doesn't — isn't exactly substantially prevailing, as opposed to — which is the standard here, as opposed to prevailing. But I don't think the Court needs to get to that point, because there's no sovereign — waiver of sovereign immunity kind of broader sense. Sovereign immunity really doesn't go to that proceeding, does it? Twenty-four — or 28 U.S.C. 2465b2b is the reason he loses in that proceeding. Well — I'm not sure that the waiver of sovereign immunity really applies there, because the statute's dead on. The claimant can't get it if he is the guy who did the crime. Agree. Agree. He can't get it for that very reason. But there's another reason he can't get it, which is that this is not a civil — this was a criminal forfeiture proceeding. And so — I understand that argument. Okay. And I'd like to back up one moment, because I think that the Defendant was talking a bit about the reason for CAFRA, the meaning of CAFRA. And I would agree that the reason or a reason, a significant reason Congress enacted CAFRA and probably put in this fee-shifting statute is that it didn't like that the government, when it didn't have a strong enough case on the criminal side, was simply going in to seize property because it was an easier standard of proof. I understand that. And there were abuses that were documented when that legislation was passed. This is a different case. The government did go the further step of indicting this case, prosecuting it, and, in fact, getting a guilty verdict. So I don't think that this is the kind of case that Congress would have even enacted the CAFRA in order to prevent. And so for those reasons, I don't — I think this Court should find there was no waiver of sovereign immunity in this case and affirm the district court. Thank you, Your Honors. Thank you. How do you want — do you want a suggestion to the Court not to have immunity? If you can do it in 30 seconds, I'll let you. Because we have to be back in here in less time than we've got, really. But don't take a minute, a minute and a half. Thirty seconds. I totally respect that. I just ask the Court to please consider the issue of 853 and proceeding. I think it's something that needs resolution in all the courts. And if you look in our briefs, there was a debate between, I think, the McInnes case and the Schott-Hasler case. And it's an important issue that all the courts are looking at for resolution, whether or not the ancillary proceeding under 853N is a civil proceeding or whether or not it's part of a criminal proceeding. And I think it's a very important issue. Even if this Court decides against my client, I would really appreciate the Court taking the opportunity to try to resolve that issue because all the courts are really confused about whether or not that is a civil proceeding or whether or not it's a criminal proceeding. That's all I have to say. Thank you. All right. This Court is in recess for some time, and we'll be back.
judges: N.R. Smith, Owens, Collins